DREW, Justice (Ret.).
Following sixteen months of investigation, the Public Service Commission (hereinafter referred to as the Commission) entered an order which eventually resulted in the final order here for review, a portion of which is as follows:
“The information compiled during the past 16 months, and which is set forth hereinafter, shows an astounding disregard for the imperatives of Chapter 323, Florida Statutes, and Chapter 25-5, Florida Administrative Code. Schreiber has operated at the pleasure and convenience of Schreiber. Lack of authority or certificate restrictions leave the carrier undaunted. Time has fostered no familiarity with the scope of its authority.”
The hearing examiner found petitioner Schreiber guilty of 164 territorial violations of its certified authority and fined it $3,500; found it guilty of failure to operate on approved schedules and fined it $1,500; found it guilty of failure to register interstate operations and fined it $1,000; and, found it guilty of failure to perform under its certificate and fined it $1,000, to be suspended if it “discontinue[d] all use of agent companies within ninety days.”
On consideration of the examiner’s report and exceptions filed thereto and after argument, the Commission, on August 4, 1975, concluded the matter by the entry of its order, the material portions of which are:
“Twenty-seven of the territorial violations involve transportation between Pal-atka and Orlando. Schreiber interprets its certificate so as to authorize it to serve Palatka on the one hand and Orlando on the other, but not intermediate points. Such an interpretation is, however, contrary to the plain language of the certificate, and to the findings contained in Order No. 11260, Docket No. 72351 — CCT, wherein Respondent was similarly cited for transportation of freight between Palatka and Orlando.
“Respondent’s certificate authorizes transportation south of State Highway 686, in Pinellas County, excluding Largo. Thus, both Largo and Clearwater are outside Schreiber’s authorized territory. However, 76 instances were found where Schreiber transported freight to or from Largo and Clearwater. It does not deny making these shipments, but contends they are within the ‘commercial zone’ of Tampa, which it is authorized to serve. This argument must be rejected since the certificate specifically grants authority to serve only that portion of Pinellas County south of Higway 686. Thus, points north of this highway are excluded regardless of ‘commercial zone’ considerations.
“Bills of Lading also revealed 20 shipments involving transportation between Hillsborough, Pinellas or Polk County on one hand, and Dade or Broward County on the other. Schreiber has no authority to provide this transportation. The final 41 territorial violations involve various points which Schreiber is not authorized to serve, but which were demonstrated to have occurred by Bills of Lading and arrests (Show Cause Order 11466, §§ A4, G3 and G7).
“Schreiber is charged with failure to operate approved schedules as required by Commission Rules 25-5.19, .20. Records reveal some 167 missed schedules *23 (of a possible 410) on seven routes during the last five months of 1972. Schreiber does not deny these violations, but contends there is no evidence of service degredation. This argument might warrant consideration were the violations few in number. Here, however, Respondent has wilfully disregarded Commission rules and its own published schedules.
“Schreiber has no certificate of registration of any interstate authority on file with this Commission, as required by §§ 323.03, .28, F.S. It is charged with making 29 interstate shipments during the last three months of 1972. Schreiber first contends such shipments, having pick-up and delivery points in Florida, are not necessarily ‘interstate’ in character. This argument must be rejected since the Bills of Lading (from Respondent’s own files) in all instances show an origin or destination outside the state. Schreiber next contends such shipments, even if interstate, are exempt from ICC certification as being within the ‘terminal area’ of the air carriers. Even if this is true, Schreiber must obtain a certificate of registration from this Commission pursuant to § 323.28(2), F.S. Since it has not done so, all such transportation is illegal.
“Respondent is charged with allowing six agent transportation companies to operate so independently as to constitute an unauthorized lease of operating authority. The Commission staff produced witnesses representing three of the six agent companies. Their testimony established that Schreiber delegates all responsibility for operations to locate agents, except the handling of insurance and processing of claims. The agent companies typically pick-up and deliver freight in their terminal areas and arrange for owner-operators to perform line-haul transportation using Schreiber trailers and/or placards. It was demonstrated that Schreiber had relinquished substantially all control over these agents, thus violating Commission Rule 25-5.22 (requiring transportation to be performed by the certificate holder). Since many of the practices engaged in by Schreiber (cartage agents, owner-operators, etc.) have been approved or tolerated by this Commission in the past, the assessed penalty should be suspended on condition that present methods of operation be discontinued.
“Respondent is charged with making ‘material misrepresentations’ in violation of Commission Rule 25-5.07. Such representations allegedly involve Schreiber’s agreement to centrally locate its records within Florida. This requirement was the subject of an earlier show cause proceeding (Docket No. 72144-CCT, Order 11261, March 6, 1974) and is apparently still not fully accomplished. However, the staff presented no evidence from which it can be determined what Schreiber’s original representations were or the degree of compliance achieved (See TR 66-68). Thus, there can be no finding that material misrepresentations were made within the meaning of Commission Rule 25-5.07.
“No evidence was introduced as to Section F of Show Cause Order 11466, pertaining to standards of service. Likewise, no evidence was presented on 32 of the 196 alleged territorial violations (§ Al; last two § A3; all page 10, § A6, §§ Gl, 2, 4, 5, 6, 8, 9, 10). These charges are, therefore, considered to be withdrawn.
“The preceding findings of fact and conclusions are taken verbatim from the Examiner’s Findings of Fact and Conclusions. The Commission adopts these findings and conclusions as its own. Respondent’s exceptions to the Examiner’s report raise no issues or arguments not covered in its Memorandum of Law which the Examiner required be filed by the Commission and Respondent before he made his report.
“Our only departure from the Examiner’s recommendation comes in assessing a proper penalty. The Examiner assessed lump sum penalties, $3500, $1500, $1000 and $1000, with the latter $1000 being suspended on condition that it discontinue all use of agent companies within 90 days. Due to the large number of terri *24 torial violations, we feel that these should bear the brunt of the penalty. We conclude that a fine of $100 for each of the 164 certificate and territorial violations will be a sufficient penalty for past violations and at the same time will deter future violation. A fine of $16,400 is, hopefully, sufficiently large to get Schreiber’s attention and should serve as warning that future transgressions will not be tolerated. Having made our point, we will not assign a monetary penalty to the other charges of which Sehreiber was found guilty. It is, therefore,
“ORDERED by the Florida Public Service Commission that Sehreiber Express, Inc. be and the same is hereby found guilty of 164 territorial violations of its certificated authority and be fined the sum of $16,400, payable within 30 days of the date of this order. §§ 323.02, .09, Florida Statutes. It is further.
“ORDERED that Sehreiber Express, Inc. be and the same is hereby found guilty of failure to operate approved schedules. § 323.02, Florida Statutes; §§ 25-5.19, .20, F.A.C. It is further
“ORDERED that Sehreiber Express, Inc. be and the same is found guilty of failure to obtain a certificate of registration of interstate operations. §§ 323.02, .28(2), Florida Statutes. It is further
“ORDERED that Sehreiber Express, Inc. be and the same is found guilty of failure to perform under its certificate in that it allowed agents to operate its certificate in its stead, and is hereby ordered to discontinue all use of agent companies in operations under its certificate within 90 days of the date of this order. § 25-5.22, F.A.C. It is further
“ORDERED that Sehreiber Express, Inc. be and the same is hereby found not guilty of all other charges in this docket.” In re Schreiber Express, Inc., Order No. 12250, Dkt. No. 74330-CCT(SC) (Fla.Pub. Serv.Comm’n 1975).
Petitioner presents five issues for our determination. We have examined each, and, with the exception of the assertion that the Commission erred in its interpretation of the Interstate Commerce Commission’s authority over certain shipments moving from or to airports in interstate traffic, we find them either to be without merit or failing to show any material departure from the essential requirements of the law. The exception merits discussion.
Sehreiber does not have on file with the Commission (if, in fact, it possesses one) a certified copy of its authority from the Interstate Commerce Commission to move interstate commerce over the Florida highways. The record establishes that it had moved twenty-nine such shipments unlawfully. Of this total, four originated at or were destined to an air freight terminal. These movements, petitioner says, are exempt motor transportation, citing Hazel Kenny, 61 M.C.C. 587, 9 Fed.Carr.Cas. ¶ 32,-735 (1953), in which the ICC defined exempt motor transportation as:
“. . . that confined to the transportation in bona fide collection, delivery or transfer service of shipments which have been received from, or will be delivered to, an air carrier as part of a continuous movement under a through air bill of lading covering in addition to the line-haul movement by air the collection, delivery or transfer service performed by motor carrier.”
The ICC earlier in its ruling stated that:
“Motor transportation is ‘incidental’ to transportation by air when that motor transportation is limited to a bona fide collection, delivery, or transfer service within a reasonable terminal area of the air carrier. Conversely stated, such motor transportation is not ‘incidental’ to transportation by air when it is transportation having the character of a connecting-carrier line-haul service.”
Subsection 323.28(2), Florida Statutes, provides in part, however, with reference to such movements:
“It is unlawful for any motor carrier transporting for compensation in interstate commerce in Florida for which a certificate of public convenience and ne *25 cessity or a permit is required from the interstate commerce commission to operate over the public highways of this state without first having filed a certified copy of such interstate commerce commission authority with the Florida public service commission and having obtained from the Florida commission a certificate of registration. It is also unlawful for any such companies transporting for compensation under exemptions provided by the interstate commerce act to operate in Florida without first having obtained such a certificate of registration.” [Emphasis added.]
The Commission contends, and we agree, that as to these four shipments from or to the air terminals, the statute required that a copy of Schreiber’s certificate to move interstate commerce be filed with them before it lawfully could move them. B & G Horse Transportation, Inc. v. Yarborough, 261 So.2d 159 (Fla.1972), relied on by petitioner, while holding that the Commission had no authority to attempt to regulate such traffic by for-hire permits, acknowledged that:
“. . . [T]his decision does not preclude any otherwise authorized carriage by Murty Brothers under any other procedures which may apply, including a certificate of registration which might authorize transportation of such commodities in the area involved, if it would.” Id. at 160.
Certiorari is denied.
OVERTON, C. J., and ROBERTS, BOYD and ENGLAND, JJ., concur.